IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| EuGene Clowers, ) | |
| ) | C/A No. 2:06-2530-MBS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **O R D E R  A N D** |
| Jon Ozmint, Collie Rushton, ) | **O P I N I O N** |
| Leroy Cartlidge, NFN Parker, and ) | |
| South Carolina Department of Corrections, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This is a pro se action brought by EuGene Clowers ("Plaintiff"), an inmate of the South Carolina Department of Corrections ("SCDC"), against Jon Ozmint, Director of the SCDC; Collie Rushton, Warden of McCormick Correctional Institution ("MCI"); Leroy Cartlidge, Associate Warden of MCI; James Parker, Associate Warden of MCI; and the SCDC (together "Defendants"). Plaintiff claims that Defendants forcibly exposed him to environmental tobacco smoke ("ETS") in violation of his Eighth Amendment rights. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, seeking punitive and compensatory damages, compensation for annual chest and lung check-ups to be conducted over the next five years, and compensation for "any lung disease, cancer, or heart problems, diagnosed or treated within the next 15 years, attributable to the [ETS] prolonged exposure." Plaintiff's Pro Se Complaint, p. 5.

This matter is now before the court on Defendants' motion for summary judgment, filed on March 23, 2007. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02, this matter was

referred to United States Magistrate Judge Robert S. Carr for pretrial handling. On March 28, 2007, the Magistrate Judge issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising Plaintiff of the summary judgment standard and the possible consequences if he failed to respond to Defendants' motion within ten (10) days. Plaintiff failed to respond, and on May 14, 2007, the Magistrate Judge issued an order allowing Plaintiff an additional ten (10) days to respond to Defendants' motion for summary judgment. The clerk of court mailed a copy of the May 14, 2007 order to Plaintiff at the Silverdale Detention Facility in Chattanooga, Tennessee. On May 23, 2007, the court's order was returned as "undeliverable." On June 6, 2007, the court mailed Plaintiff a copy of the court's order to Plaintiff's new residence at the Coleman II Correctional Institution in Coleman, Florida. On June 27, 2007, Plaintiff filed a motion for extension of time to respond to Defendants' motion for summary judgment. In this motion, Plaintiff explained that he had experienced several problems sending and receiving mail while in transition between facilities. The Magistrate Judge granted Plaintiff's motion, giving Plaintiff until August 17, 2007 to respond to Defendants' motion for summary judgment. Plaintiff did not respond by this deadline. On August 27, 2007, the Magistrate Judge issued a Report and Recommendation finding that Plaintiff's pro se complaint should be dismissed with prejudice for failure to prosecute.

On September 19, 2007, Plaintiff filed objections to the Report and Recommendation, in which he asserted that his response to Defendants' motion for summary judgment was removed from his cell by prison officials during "lockdown" on August 10, 2007. Plaintiff simultaneously submitted his response to Defendants' motion for summary judgment. On September 20, 2007, Defendants filed a reply brief in support of their motion for summary judgment.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

MCI has specific policies and procedures in place regarding smoking and cell assignment. Priority for assignment to MCI's non-smoking unit is given to inmates with specific medical restrictions. Parker Affidavit, p. 2. Plaintiff, who suffers from narcolepsy and cataplexy, has a medical restriction that gives him priority for a ground floor cell and a bottom bunk bed. Id. However, Defendants did not grant Plaintiff a medical restriction that would qualify him for priority assignment in the non-smoking unit. McCree Affidavit, p. 2.

Under MCI's cell assignment procedures, inmates who wish to be placed in the non-smoking unit may request a transfer. Parker Affidavit, p. 2. Except in cases of "extreme emergency," all cell transfer requests are referred to MCI's Classification Committee. Rushton Affidavit, p. 3. The Classification Committee may receive fifty to sixty such requests per day. Rushton Affidavit, p. 2. There is currently a waiting list for inmates who wish to be placed in MCI's non-smoking unit. Parker Affidavit, p. 2. In MCI's smoking units, inmates who smoke are instructed that they are not supposed to smoke in their cell if they are housed with a non-smoking inmate. Rushton Affidavit,

p. 1. Non-smoking inmates are expected to contact prison officials if one of their cellmates smokes without their permission. Rushton Affidavit, p. 2.

In August 2004, Plaintiff was incarcerated at MCI, which is operated by the SCDC. Plaintiff claims he signed a document during the intake process requesting assignment to MCI's non-smoking unit. Plaintiff was placed in a smoking unit with two smoking cellmates. Plaintiff alleges that he suffered coughing, chest pains, sickness, and a hernia as the direct or indirect result of exposure to ETS. According to Plaintiff, he complained in writing in February 2005 that he was suffering these and other symptoms as a result of exposure to ETS. Plaintiff contends that he wrote numerous requests in 2005 and early 2006 to be moved to MCI's non-smoking unit. However, Plaintiff remained in the smoking units, with smoking cellmates, until he was released from MCI in July 2006.

## II. DISCUSSION

A. The Magistrate Judge's Report and Recommendation

As a preliminary matter, the court must consider the Magistrate Judge's recommendation that the court dismiss Plaintiff's complaint with prejudice for failure to prosecute. In his objections to the Report and Recommendation, Plaintiff asserts that his response to Defendants' motion for summary judgment should be regarded as timely pursuant to Houston v. Lack, 487 U.S. 266 (1988). In Houston, the Supreme Court held that a pro se appeal submitted by a prisoner is deemed filed at the time it is delivered to prison officials for forwarding to the District Court. 487 U.S. at 270. The Fourth Circuit has since extended the rule to include other pro se submissions. See Lewis v. Richmond City Pol. Dep't, 947 F. 2d 733, 735-36 (4th Cir. 1991).

Plaintiff claims that the Coleman II facility went into "lockdown" on August 10, 2007. Plaintiff claims that on the evening of August 10, 2007, he "placed his objection to the summary judgment in the crack of the cell door, along with a copy for the attorneys of the defendant, and it was removed by the officer in the unit or relief officer." Plaintiff's Objection, p. 1. Plaintiff asserts that placing the response in the crack of the cell door constituted "delivery" to prison authorities prior to the August 17, 2007 filing deadline. Defendants do not dispute Plaintiff's version of events.

Under the circumstances set forth by Plaintiff, the court finds that delivery was effective when prison authorities removed Plaintiff's submission from the crack in his cell door. Accordingly, the court declines to adopt the Recommendation of the Magistrate Judge. Plaintiff's response to Defendants' motion for summary judgment will be deemed timely.

B.  Defendants' Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. Id. Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to

material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Mayland Cmty. College, 955 F.2d 924, 928 (4th Cir. 1992).

The Eighth Amendment protects prison inmates from cruel or unusual punishment and extends to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). Nevertheless, the Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Id. at 347).

A prisoner may bring a cause of action for a violation of Eighth Amendment rights, pursuant to 42 U.S.C. § 1983, by alleging that prison authorities, with deliberate indifference, exposed the prisoner to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to the prisoner's future health. Helling, 509 U.S. at 35. In order to prove such a constitutional deprivation, the prisoner must establish a two-part inquiry that involves objective and subjective elements. First, the objective inquiry requires that the prisoner establish that he or she has been exposed to unreasonably high levels of ETS, placing the prisoner at such great risk as to violate contemporary standards of decency. Id. at 36. Second, the subjective inquiry requires that the prisoner establish that the defendants are deliberately indifferent to the prisoner's exposure to this risk. Id.

*1. The Objective Element*

In considering the objective factor of the two-prong Helling test, the court must consider both "the seriousness of the potential harm and the likelihood that such an injury to health will actually

be caused by exposure to ETS," and "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Id. at 36 (emphasis in original).

Plaintiff has failed to provide any evidence that he was exposed to unreasonably high levels of ETS or that the risk to his health was so grave as to violate contemporary standards of decency. Over the course of the twenty-two months Plaintiff was incarcerated at MCI, Plaintiff reported cold-like symptoms to MCI medical personnel on nine separate occasions.[1] Six of these instances took place in the approximately seven months between September 6, 2005 and March 31, 2006. The medical records contain no indication that Plaintiff complained about ETS or that his health was severely compromised by exposure to ETS. Furthermore, Plaintiff is no longer incarcerated at MCI.

---

[1] On January 7, 2005, Plaintiff reported to MCI medical personnel that he had a cough, sore throat, and was experiencing a general malaise. Plaintiff's MCI Medical Records (hereinafter "Exhibit 1"), p. 32. Plaintiff was diagnosed with a common cold and instructed to discontinue smoking. Id. On February 4, 2005, Plaintiff reported to MCI medical personnel that he had a sore throat, headache, congestion, and sinus pressure. Exhibit 1, p. 28. On September 6, 2005, Plaintiff reported to MCI medical personnel that he was experiencing congestion, sneezing, and coughing. Exhibit 1, p. 11. Plaintiff was diagnosed with a common cold, and instructed to discontinue smoking. Id. On October 24, 2005, Plaintiff reported to the medical unit with cold and flu-like symptoms. Exhibit 1, p. 7. Plaintiff was diagnosed with an external ear infection and a common cold, and was instructed to discontinue smoking. Exhibit 1, p. 8. On November 4, 2005, Plaintiff reported to the medical unit with sinus congestion and a dry cough. Exhibit 1, p. 6. Plaintiff was diagnosed with sinus congestion and a common cold, and instructed to discontinue smoking. Exhibit 1, p. 7. On December 20, 2005, Plaintiff reported to the medical unit with congestion, aches and pains, and coughing. Exhibit 1, p. 5. Plaintiff was again diagnosed with a common cold. Id. On February 24, 2006, Plaintiff reported to the medical unit with sinus problems. Exhibit 1, p. 5. Plaintiff was diagnosed with a common cold and instructed to discontinue smoking. Id. On March 31, 2006, Plaintiff reported to the medical unit with light congestion. Exhibit 1, p. 4. Plaintiff was again diagnosed with a common cold and instructed to discontinue smoking. Id. On June 30, 2006, Plaintiff reported to the medical unit with congestion and a headache. Exhibit 1, p. 3.

7

The fact that Plaintiff is no longer incarcerated at MCI is "plainly relevant" to the objective inquiry. Helling, 509 U.S. at 35.

Plaintiff claims that Defendants assigned him to a smoking unit despite Plaintiff's history of heart problems and high blood pressure, which Plaintiff claims made him particularly susceptible to ETS. However, Defendants have submitted an affidavit from Dr. John B. McRee, Plaintiff's treating physician at MCI, who avers that Plaintiff's medical records do not indicate that Plaintiff had a medical condition that would have been specifically exacerbated as a result of his exposure to ETS. McRee Aff., p. 2. Dr. McRee also expresses his opinion that Plaintiff's hernia was not related to his exposure to ETS. Id. Plaintiff's mere allegations are insufficient to demonstrate that he was exposed to unreasonably high levels of ETS or that his exposure violated contemporary standards of decency. See Oliver v. Deen, 77 F.3d 156, 161 (7th Cir. 1996) (granting summary judgment to defendants where plaintiff could not show that "he had a medical need sufficiently serious to implicate the Constitution or to support his claim for damages" from ETS while incarcerated by the defendants); Simmons v. Sager, 964 F. Supp. 210, 213 (W.D. Va. 1997) (granting summary judgment to defendants where plaintiff failed to demonstrate any actual injury or health problems potentially aggravated by ETS exposure).

*2. The Subjective Element*

Plaintiff also claims that he filed numerous grievances regarding his cell assignment, which Defendants ignored. Plaintiff argues that Defendants were therefore "deliberately indifferent" to the risk he faced from ETS exposure. Defendants contend, however, that they received only one smoking-related grievance from Plaintiff, dated June 2, 2006 and that they responded to Plaintiff's grievance on June 9, 2006 by placing him on the waiting list for a non-smoking cell assignment.

8

Defendants did not grant Plaintiff priority assignment in the non-smoking unit because they did not consider him medically qualified. McCree Affidavit, p. 2. There is no evidence that Defendants knew of any medical condition that would qualify Plaintiff for placement in the non-smoking unit.

In considering the subjective element of the two-prong Helling inquiry, Defendants' compliance with a smoking policy will "bear heavily on the inquiry into deliberate indifference." Helling, 509 U.S. at 36. MCI has adopted specific policies regarding smoking and cell assignment. Plaintiff has not presented any evidence that Defendants failed to follow these policies.

Finally, Plaintiff has produced no evidence to substantiate his claim that he filed "numerous" grievances about ETS exposure. Plaintiff's medical records show no indication that Plaintiff ever complained about ETS, even when he sought treatment for coughing and cold-like symptoms. Under these circumstances, Plaintiff fails to demonstrate that Defendants were "deliberately indifferent" to his risk of exposure to ETS.

### III. CONCLUSION

For the reasons stated, Defendants' motion for summary judgment is GRANTED. The court declines to adopt the Magistrate Judge's Report and Recommendation.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
United States District Judge

March 28, 2008

Columbia, South Carolina